## CAZIER v. STACK.

No. 2598.   Decided August 25, 1914 (143 Pac. 133).

1. SALES—REMEDIES OF SELLER—ACTION FOR PRICE—COMPLAINT.
A complaint alleged that plaintiff agreed to furnish defendant
f. o. b. N. one hundred tons of baled alfalfa hay, good quality,
on order during the fall and winter months next succeeding,
at twelve dollars per ton, defendant to pay plaintiff at that
rate for all hay placed on board cars during the time up to
the limit of one hundred tons; that, pursuant to the contract,
plaintiff shipped two cars, which were received without objec-
tion as to quality or quantity; that, although plaintiff was
ready to furnish the balance of the hay in accordance with the
contract, defendant on or about February 1, 1912, notified
plaintiff that he did not desire any more hay, and refused to
take any more under the contract, whereupon plaintiff de-
manded the balance due for the amount shipped. *Held*, that
the complaint showed a completed contract with respect to
time and place of payment, and delivery and excuse for non-
delivery of the balance, and was therefore not demurrable.
(Page 126.)

2. SALES—CONTRACT—BUYER'S BREACH. Where defendant con-
tracted to purchase one hundred tons of alfalfa hay from
plaintiff, as ordered, during the fall and winter months of
1911-12, and defendant, having received two shipments in
November and December, 1911, refused to order or receive
any more until April, 1912, when he directed shipment of the
balance, which plaintiff refused to ship because of defendant's
failure to pay for the last car shipped, a finding that defend-
ant, by not ordering the balance until April, was not entitled
to further shipments, and that he breached the contract, was
proper. (Page 127.)

Appeal from District Court, Fifth District, *Hon. Joshua
Greenwood,* Judge.

Action by Orson Cazier against J. D. Stack.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Thos. Marioneaux* and *B. N. C. Stott* for appellant.

*T. H. Burton* and *Cheney, Jensen & Holman* for re-
spondent.

### APPELLANT'S POINTS.

"Where before the time arrives for the performance of the contract by one party, the other absolutely and unqualifiedly announces that he will neither receive such performance by the former nor perform on his own part, the former may, if he desires, consider himself as absolved from his duty to perform. This renunciation by the other, however, must be more than a mere threat of non performance, and, *a fortiori*, more than mere idle talk of not performing; *it must be a distinct, unequivocal and absolute refusal to receive performance or to perform on his own part.*" Mechem on Sales, Section 1087.)

In *Brown* v. *Accident Association*, 18 Utah 265; on page 277 this court adopts the following quotation as the law: "In *Rosenthal* v. *Walker*, 111 U. S. 185, it was said: The rule is well settled that if a letter properly directed is proved to have been either put into the postoffice or delivered to the postman, it is presumed, from the course of business in the postoffice department, that it reached its destination at the regular time, and was received by the person to whom it was addressed. Greenleaf on Evidence, Sec. 40; *Schutz* v. *Jordan*, 141 U. S. 213; *Susquehanna Mut. Ins. Co.* v. *Toy Co.*, 97 Pa. St. 424; *Howard* v. *Daly*, 61 N. Y. 362; *Dana* v. *Kremble*, 19 Pick. 112; *Montelins* v. *Atherton*, 6 Colo. 224; *Breed* v. *First Nat. Bank, Id.* 235.''

STRAUP, J.

This action grew out of an alleged breach of contract. The plaintiff had judgment. The defendant appeals.

In the complaint it is alleged that in October, 1911, the plaintiff and defendant entered into an agreement, by the terms of which the plaintiff agreed "to furnish the defendant f. o. b. Nephi City one hundred tons of baled alfalfa hay, good quality, on order during the fall and winter months next succeeding, for the sum and price of twelve dollars per ton, and defendant agreed to pay plaintiff the said sum of twelve dollars per ton for all hay placed on board the cars at Nephi City for the defendant during said time up to the limit of one hundred tons." It is further

alleged that, in pursuance of the contract, the plaintiff, on the 13th day of November, 1911, shipped to the defendant one car containing 34,544 pounds of hay, and on the 7th of December a car containing 29,555 pounds, and that the hay was received by the defendant without complaint or objection as to its quality or quantity. It is further alleged that:

"Although plaintiff was ready and willing at all times during said fall and winter months to furnish hay to the defendant in accordance with the terms of his said contract, the defendant, on or about the 1st day of February, 1912, and at various other times, notified plaintiff that he did not desire any more of said hay shipped to him, refused to live up to the terms of his said contract, and advised plaintiff that he would not consider himself bound further by the terms thereof."

Then it is alleged that for the hay shipped the defendant paid $207.27, and that there was still due and unpaid $177.33. Judgment was demanded for $177.33 and interest.

To this complaint the defendant interposed a general and special demurrer. It was overruled. The defendant answered and counterclaimed, alleging damages for plaintiff's failure to deliver all the hay.

The case was tried to the court. The facts were found as alleged in the complaint, and a judgment rendered in favor of the plaintiff for $177.33 and interest. The counterclaim was dismissed.

It is first urged that the court erred in overruling the demurrer. In support of the demurrer it is claimed that sufficient facts are not stated to show a completed contract with respect to the time and place of payment, and a delivery, or an excuse for nondelivery; and that the complaint in such particulars is uncertain and ambiguous. We think sufficient facts with reasonable certainty are stated to show a good contract and a breach or repudiation on the part of the defendant, with resulting damages. No error, therefore, was committed in overruling the demurrer.

It is next contended that certain findings are not supported by the evidence.  Among other things the court found that, after the two shipments had been made, the defendant notified the plaintiff ''that he did not want any more hay''; that ''the plaintiff was ready, willing, and able during said fall and winter months to furnish hay to the defendant in accordance with the terms of the agreement''; that, after the two shipments had been made in November and December, no further orders were given by the defendant until the middle of April following, when, as found by the court, the contract had ended.  These findings are questioned.

The facts are:

On September 29, 1911, the defendant, at Eureka,' wrote the plaintiff at Nephi:

''Mr. Blacket advises me that you have some good lucerne for sale.  How much first cutting have you that you. will contract to sell me as *I want it during the winter?*  Of course 1 will try and fix it so as to be convenient for you to load and may take two or three cars at a time.  Just now I am filled up but will want some more latter part of October.  Give your best price on first cutting.''

To this plaintiff on October 4th replied:

''I have fifty tons of first cutting and fifty tons of the nicest second crop that was ever grown that I will contract to sell you at $12 per ton f. o. b. Nephi.  I will load the hay for you any time you want it *during the fall and winter*.  *  *  *  If you care to contract with me for the hay let me know.''

On October 7th the defendant:

''I have plenty of hay for a month yet and *will take you up on this offer* and expect you to hold me the one hundred tons of hay.  *  *  *  I will take this amount of hay from you and expect you to deliver it to me even if hay should advance in price.  *Will let you know when to ship me* and will try and make it as convenient for you as possible.''

On the 13th of November the plaintiff, on defendant's order, shipped him one car of hay containing 34,545 pounds, and on the 7th of December another car of 29,555 pounds.

The first car came to $207.27; the second to $177.33.  On February 12th following, the defendant sent plaintiff a check for the first car and a letter in which he stated:

"This was the rottenest deal on hay I have had yet.  You promised to ship me good hay and unless you can do so I will not want any more.  I am also entitled to reimbursement for the truck you had on those cars."

The plaintiff replied that he was surprised at the contents of the letter and stated:

"If you are finding fault with the quality of the hay as an excuse for not wanting to live up to the contract you made with me for one hundred tons of hay I can tell you that you have no need to worry about that as I have no trouble in selling my hay and I will gladly release you from the contract when you pay me for what hay you have had."

No future orders were received by the plaintiff from the defendant until the middle of April.  On April 10, 1912, the plaintiff wrote the defendant demanding payment for the second car shipped in December, and stated that he expected a check for $177.33 by return mail.  The defendant, three days thereafter, wrote plaintiff:

"Please ship me balance of the one hundred tons hay that I contracted for.  You may ship it subject to bill lading. Can use it just as fast as you can load it."

The plaintiff replied:

"Unless I receive check from you by return mail for $177.33, the amount due me for car of hay shipped to you December 7, 1911, this account will be placed in the hands of an attorney for collection."

Four or five days thereafter the defendant wrote, stating that there was still due him sixty-eight tons of hay, and that:

He "held this hay in reserve until late winter as hay is always scarce at that time.  I must insist now on your shipping it without further delay.  * * *  The car I owe you for was not up to standard required by our agreement.  If it had been I would have paid you long ago."

Upon this it is contended that the defendant did not repudiate the contract, and that, under the terms thereof, he

was entitled to order hay and require the plaintiff to fill the order as late as the middle of April, but that the plaintiff, without cause, had failed to ship the balance of the hay so demanded in April. Under the terms of the contract, the plaintiff agreed to ship the hay ''during the fall and winter'' on the defendant's order. Two cars were so shipped. The defendant refused to pay for the second shipment. He objected to the quality of the hay and in effect, as found by the court, notified the plaintiff not to ship any more. The hay was not to be shipped until ordered. No further order was given until the 13th of April. Under the terms of the contract, we think the plaintiff was then not required to fill the order. April cannot be regarded a fall or winter month. Further, we think the plaintiff was justified in treating the contract as broken and repudiated by the defendant when he notified the plaintiff that he did not want any more hay and refused to pay for that already shipped him.

The court found that the hay shipped was good hay and of the kind and quality described in the contract. Upon that question the evidence is in conflict; but there is sufficient evidence to support the finding. So, when the defendant ordered hay in April, the contract had been breached by him several months before by his failure and refusal to pay for the hay theretofore shipped him.

We are of the opinion that the judgment of the court below should be affirmed, with costs.

Such is the order.

McCARTY, C. J., and FRICK, J., concur.